**Not for Publication in West's Federal Reporter**
**Citation Limited Pursuant to 1st Cir. Loc. R. 32.3**

# United States Court of Appeals
## For the First Circuit

———————

No. 02-2608

CHARLES F. SCHMITZ,

Plaintiff, Appellant,

v.

INTEL CORPORATION,

Defendant, Appellee.

———————

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Reginald C. Lindsay, U.S. District Judge]

———————

Before

Boudin, Chief Judge,

Lipez and Howard, Circuit Judges.

———————

John D. Corrigan, with whom O'Malley and Harvey, LLP, were on brief, for appellant.
Michele A. Whitham, with whom Vijay Moses and Foley Hoag LLP, were on brief, for appellee.

———————

June 10, 2003

———————

**Per Curiam**.  Plaintiff Charles F. Schmitz appeals the district court's award of summary judgment to defendant Intel Corporation on his state law claim of unlawful age discrimination.  See Mass. Gen. Laws ch. 151B.  Schmitz contends that the court erred in concluding that his claim was both untimely and inadequately supported to withstand summary judgment.  We bypass the court's statute of limitations ruling and proceed directly to the merits, summarizing the facts relevant to our decisional basis in accordance with the dictates of Fed. R. Civ. P. 56.

In May 1998, Intel acquired from Digital Semiconductor a computer chip manufacturing facility known as "Fab 17" located in Hudson, Massachusetts.  Following the transaction, Intel transferred Schmitz (who had been with Digital since 1990 and had been performing equipment maintenance in a Digital laboratory) to a position as a manufacturing technician in Fab 17's manufacturing department.  On June 23, 1998, Schmitz turned 48 years old.

The manufacturing department, one of several departments within Fab 17, was responsible for manufacturing computer chips and maintaining Fab 17's equipment.  Intel assigned four shifts to work within the manufacturing department and organized the employees on each shift into eight functional areas.  Intel further divided the employees within each functional area into "module teams."  Intel assigned Schmitz, who worked "Shift 7," to the "Front End" module team within the manufacturing department's "Etch" functional area.

During the summer of 1998, Fab 17 was operating at only 25 percent of its manufacturing capacity. In order to keep its pricing competitive, Intel decided to lay off approximately 450 employees, including approximately 110 of its 320 manufacturing technicians. Intel's senior management established a hierarchy of criteria that would be used in selecting which manufacturing technicians would be retained. The management team charged with implementing the layoffs (the "Selection Committee") was to prioritize the retention of workers with skills critical to keeping the manufacturing department fully operational despite a reduced workforce. In determining which workers possessed these critical skills, the Selection Committee was to look at the number and quality (there were three skill levels) of operational proficiency "certifications" that each employee had earned. Next, the Committee was to prefer employees with high job performance ratings. Finally, as a tie-breaker, the Committee was to prefer employees with seniority.

As it happened, the Selection Committee deemed the first criterion a sufficient predicate upon which to base its decisions and never consulted information other than that relevant to this criterion. Thus, in making its selections, the Committee had no information about the job performance ratings, length of service, or ages of the manufacturing department employees subject to layoff. Nonetheless, at a September 21, 1998, meeting convened to

notify employees about the impending workforce reduction, a management representative suggested that job performance and seniority had played a role in the layoff decisions.

In building Fab 17's new manufacturing department, the Selection Committee first attempted to identify the minimum number of employees within each module team necessary to perform all of the team's work, and then added employees from different module teams (but from within the same functional area) if necessary to fill any skills gaps. The Committee did not move manufacturing technicians between or among shifts and functional units; instead, it treated each functional area within each shift as a distinct unit for decisional purposes.

The Selection Committee retained only eleven of the twenty-seven manufacturing technicians who had previously been working in the Shift 7 Etch functional area. The persons chosen to staff the new Shift 7 Etch had earned the most, and the highest levels of, certifications as of the last week in August 1998 -- the cut-off date used by the Committee. In the Committee's estimation, these employees would be able to run Shift 7 Etch by themselves. The Committee also transferred into Shift 7 Etch a thirty-eight year old engineering technician (who had been laid off pursuant to a distinct and unrelated selection process) named David O'Connor. Intel regarded engineering technicians as having much higher skill sets than manufacturing technicians, and the Committee decided that

O'Connor's skills would complement those of the eleven remaining Shift 7 Etch manufacturing technicians.

Schmitz was the only manufacturing technician who had zero current certifications (Intel only considered a certification "current" if the employee had performed the process for which he or she was certified within Fab 17 in the previous year) at the time the Committee made its selections. Consequently, the Committee decided to lay Schmitz off. Schmitz was notified of the Committee's decision in a letter dated September 22, 1998. In December 1998, Schmitz received a final performance review in which Intel mistakenly identified him as an employee with more technical and leadership responsibilities than his personnel grade would warrant. As a result, the review unfairly cited Schmitz's lack of leadership skills and technical proficiency as causes for concern. On January 16, 1999, Intel terminated Schmitz's employment.

Because Schmitz believed that Intel carried out its workforce reduction with an eye towards purging Fab 17 of some of its older workers (including himself), he filed a charge of discrimination with the Massachusetts Commission Against Discrimination and subsequently sued Intel under Massachusetts' anti-discrimination statute -- Mass. Gen. Laws ch. 151B -- in state superior court. Intel removed the case to the district court on the basis of diversity jurisdiction and in due course moved for summary judgment. The court granted the motion on a number of

grounds, only one of which is relevant to our analysis. The court determined that, to the extent that Schmitz had adequately pleaded a disparate treatment claim at all, the claim foundered on the complete absence of evidence of discriminatory animus towards him. Schmitz contests this determination, arguing that a factfinder reasonably could conclude from the record that Intel had not truthfully explained the reason for his termination and that (contrary to the court's "animus is necessary" ruling) such evidence is all that is needed to forestall summary judgment under Massachusetts law. We reject on factual grounds the premise of Schmitz's argument and thus do not address Schmitz's assertion of legal error.

Schmitz asserts that, alone or in combination, four pieces of evidence in the summary judgment record permit a finding that Intel was being less than fully truthful in explaining that Schmitz had been discharged because of a lack of certifications. Schmitz first contends that evidence of certifications Schmitz had earned with Digital between 1995 and 1997 and with Intel in September 1998 calls into question whether the Selection Committee genuinely believed that he had zero certifications. But Schmitz has no answer to Intel's supported rejoinder that Schmitz's Digital certifications were not current and that his Intel certifications were earned after layoff decisions already had been made.

So too with the second and third portions of the record cited

by Schmitz:  that Intel "replaced" Schmitz with the younger O'Connor and misstated (at the September 21, 1998 meeting) the criteria that actually guided the layoff decisions.  Schmitz has no response to Intel's evidence that O'Connor was retained instead of Schmitz because he possessed skills that Schmitz lacked, and that the management representative who presented at the September 21 meeting simply erred in referencing the originally developed criteria instead of the ground on which decisions actually were made.  Finally, Schmitz has not explained how the fourth evidentiary item to which he points -- evidence that Intel mistakenly assumed he was in a higher personnel grade during his December 1998 performance review -- casts doubt on the veracity of the reason given for a termination decision that was made months earlier.  And we are unable to make the connection on our own.

**Affirmed**.